UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO AVILA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-189 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The defendants removed this prisoner civil rights case to this Court on the basis of federal-question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. The plaintiff, Alejandro Avila, filed a state-court petition that invokes several state-law causes of action, including negligence; medical malpractice (which the Court will construe as a reference to Chapter 74 of the Texas Civil Practice and Remedies Code); and Chapter 110 of the Texas Civil Practice and Remedies Code (also known as the Texas Religious Freedom Restoration Act) (Dkt. 1-2 at pp. 2, 5). The state-court petition does not specifically invoke any federal statute, though it makes vague references to the Fourteenth Amendment's Equal Protection Clause (Dkt. 1-2 at p. 4). Based on the facts pled, the only federal claims the Court can discern are Section 1983 claims under the Eighth Amendment for deliberate indifference to medical needs and safety.

The Court requested a *Martinez* report[1] from the Texas Attorney General's office, which the Attorney General's office provided and to which Avila responded (Dkt. 14 and 15). The Court construed the *Martinez* report as a motion for summary judgment, notified Avila of that construction, and gave Avila three weeks to file a supplemental response if he wished (Dkt. 17). On account of Hurricane Harvey, Avila has requested additional time (Dkt. 20). The Court, mindful of the effect that Harvey has had on this region, sympathizes with Avila but will deny the request for additional time to file supplemental briefing. The evidence in the *Martinez* report conclusively establishes that Avila cannot possibly meet the deliberate indifference standard against one defendant, and sovereign immunity shields the other.[2] The Court will grant the defendants' motion for summary judgment as to the claims brought under 42 U.S.C. § 1983. The Court declines to exercise supplemental jurisdiction over Avila's state-law claims, which will be remanded to state court. *See* 28 U.S.C. § 1367(c)(3).[3]

I.  **BACKGROUND**

Avila, who is now 50 years old, broke his left elbow when he was 13 and again when he was 15 (Dkt. 14-7 at p. 3). His state-court complaint claims that, because the

---

[1] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).
[2] The Court will consider Avila's state-court petition and its attachments to be part of the summary judgment record because Avila declared under penalty of perjury that the facts set forth in the petition and attachments are true and correct (Dkt. 1-2 at p. 6). *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see also Davis v. Hernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[F]ederal courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted).
[3] The state-court case was cause number 76949-I in the 412th District Court of Brazoria County, Texas.

elbow injury still causes him pain, he should be assigned only to lower bunks; should be restricted from work assignments that require reaching over the shoulder; and should be restricted from work assignments that require lifting (Dkt. 1-2 at pp. 5, 11). He also claims that he is entitled to some kind of treatment for the pain (he does not specify what kind of treatment) other than oral pain medication, which he cannot take for religious reasons (Dkt. 1-2 at pp. 5, 8). He also seeks compensatory and punitive damages (Dkt. 1-2 at p. 5). He is suing the Texas Department of Criminal Justice ("TDCJ") and Dr. Marcus Hinkle, a unit doctor at TDCJ's Stringfellow Unit (Dkt. 1-2 at p. 2).

According to Avila's medical records, Dr. Hinkle saw Avila several times while Avila was housed at the Stringfellow Unit.[4] At the first visit, on April 11, 2013, Dr. Hinkle noted the two elbow fractures in Avila's history and further noted that Avila experienced continuous pain in his left elbow whenever he exercised and "focal lateral left elbow pain" whenever he lifted his left arm overhead (Dkt. 14-7 at p. 3). Dr. Hinkle conducted an examination and found no heat, swelling, masses, or crepitance[5] in the left elbow (Dkt. 14-7 at p. 3). Part of the elbow was, however, tender with palpation and pronation, and Dr. Hinkle diagnosed Avila with left lateral epicondylitis, also known as tennis elbow (Dkt. 14-7 at p. 3; Dkt. 14-8 at p. 3). Dr. Hinkle offered Avila Naproxen pills for the pain, but Avila refused it on account of a religious objection to oral medication (Dkt. 14-7 at p. 3). Avila did accept a topical steroid cream, and Dr. Hinkle

---

[4] According to the TDCJ website, Avila is now housed at the Pack Unit in Grimes County. The transfer renders Avila's claims for declaratory and injunctive relief moot. *See* **Error! Main Document Only.***Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).
[5] According to the defendants' medical expert, "crepitance" is a crackling or grating sound that is most often associated with bones rubbing against one another (Dkt. 14-8 at p. 3).

also mentioned that he might try an injection later (Dkt. 14-7 at p. 3). Dr. Hinkle also recommended that Avila perform physical therapy exercises in his housing area (Dkt. 14-7 at p. 3). Avila requested a lower-bunk restriction, but Dr. Hinkle opined that such a restriction was not medically indicated (Dkt. 14-7 at pp. 2–3).

Avila returned a month later, on May 9, 2013 (Dkt. 14-7 at p. 9). He complained again to Dr. Hinkle of left elbow pain and again requested a lower-bunk restriction (Dkt. 14-7 at p. 9). Dr. Hinkle again opined that a lower-bunk restriction was not medically indicated (Dkt. 14-7 at p. 10). Dr. Hinkle's observations and diagnosis did not change, but this time he obtained Avila's consent to allow Dr. Hinkle to inject steroids and lidocaine into the painful area (Dkt. 14-7 at p. 10). Avila was "pleased with the results"—he had "almost immediate and complete relief of tenderness and [wa]s able to move his elbow normally" (Dkt. 14-7 at p. 10). Dr. Hinkle recommended daily range-of-motion exercises; advised Avila to "avoid rapid repetitive motions with the left elbow[;]" and told Avila to follow up with him in a week if the elbow did not improve (Dkt. 14-7 at p. 10).

Avila returned three weeks later, on May 30, 2013 (Dkt. 14-7 at p. 12). This time, the left elbow was better, but Avila complained of pain in his left hand that was preventing him from climbing up to his bunk (Dkt. 14-7 at p. 12). Avila told Dr. Hinkle that the pain was forcing him to sleep on the floor and that he was afraid of getting a disciplinary case as a result (Dkt. 14-7 at p. 12). Dr. Hinkle evaluated Avila's arms and found that he had normal range of motion; that he had strong grip strength, with his right hand being stronger than the left (Avila is right-handed); that he had no tenderness in his

elbows, arms, wrists, or hands; that there was no edema, bruising, crepitus, or signs of injury; that his fingers were pink and sensate; and that he had normal neurovascular and tendon function in his hands and arms (Dkt. 14-7 at p. 12). Dr. Hinkle again opined that a lower-bunk restriction was not medically indicated, but he stated in Avila's chart that he would consider referring Avila to the orthopedics department at the University of Texas Medical Branch at Galveston ("UTMB") if Avila did not improve within four weeks (Dkt. 14-7 at p. 12). Dr. Hinkle submitted a referral to UTMB, and two appointments were scheduled for Avila: one at UTMB's plastic surgery department on October 11, 2013 (which was rescheduled to October 18, 2013) and the other at UTMB's orthopedics department on January 27, 2014 (Dkt. 14-7 at pp. 14–17).

At the October 18, 2013 appointment at UTMB's plastic surgery department, the doctors noted that Avila could not fully extend his left elbow (Dkt. 14-7 at p. 21). They ruled out tendinitis and diagnosed Avila's pain as "secondary to joint osteoarthritis versus impingement syndrome" (Dkt. 14-7 at p. 22). They recommended that the orthopedic department evaluate Avila for "possible olecranon impingement" and recommended that Avila receive a lower-bunk pass (Dkt. 14-7 at p. 22). However, when Avila returned to the Stringfellow Unit, the lower-bunk pass was denied because Dr. Hinkle had not changed his opinion (Dkt. 14-7 at p. 24).

Avila's next appointment at UTMB was at the orthopedics department on January 27, 2014 (Dkt. 14-7 at p. 25). The doctor noted no atrophy, no deformity, and no acute problems (Dkt. 14-7 at p. 25). The doctor also noted, however, that Avila "lack[ed] 5 degrees extension" in the left elbow and recommended a lower-bunk pass (Dkt. 14-7 at p.

25). The lower-bunk pass was denied again when Avila returned to the Stringfellow Unit (Dkt. 14-7 at p. 26). A medical chart entry co-signed by Dr. Hinkle explains why:

> [Avila's examination at UTMB's orthopedics department] was normal except for lack of only 5 degrees in extension. [UTMB's orthopedics department] recommended bottom bunk[, but Avila] does not qualify for bottom bunk per [TDCJ] policy.[6]
> Dkt. 14-7 at p. 26.

Dr. Hinkle saw Avila for the last time on February 11, 2014 (Dkt. 14-7 at pp. 27–28). Avila requested an evaluation of his left elbow and, again, a lower-bunk restriction (Dkt. 14-7 at p. 27). Dr. Hinkle examined Avila's "shoulders, arms, elbows, wrists, and hands" and found that they were "normal" and "painless" with full range of motion and no masses, heat, or crepitus (Dkt. 14-7 at p. 27). Avila's grip strength was normal in both hands, and his fingers were pink and sensate (Dkt. 14-7 at p. 28). A lower-bunk restriction was, as before, not indicated (Dkt. 14-7 at p. 28).

Notably, other providers saw Avila after his last visit with Dr. Hinkle and reached the same conclusion about the lower-bunk restriction. Dr. Jones evaluated Avila on December 22, 2014 and concluded that a lower-bunk restriction was not medically indicated, as did Nurse LeCuyer on April 1, 2015 (Dkt. 14-5 at pp. 51–54). Avila was

---

[6] Indeed, TDCJ's requirements for a lower-bunk restriction are quite stringent, as giving an inmate such a restriction "impacts heavily on facility operations" (Dkt. 14-7 at p. 5). TDCJ's inmate classification guidelines caution that lower-bunk restrictions "should be used judiciously" and should be reserved for inmates with "conditions such as disabling arthritis, amputation, paraplegia, epilepsy, sensory disturbances, morbid obesity, or significant back pathology[,]" along with inmates who are "feeble or infirm due to age" (Dkt. 14-7 at p. 5).

issued a sleeve for his left elbow on August 9, 2016, and the pass for that sleeve has been renewed several times (Dkt. 14-3 at pp. 126, 156, 159, 173).

## II. THE PLRA AND SUMMARY JUDGMENTS

### A. The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Avila proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 56

The Texas Attorney General's office has filed a *Martinez* report, which the Court construes as a motion for summary judgment filed on behalf of the defendants. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux*

v. *Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue

concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Avila is proceeding pro se, "the notice afforded by the

Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to put that evidence properly before the court. *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### III. THERE IS NO EVIDENCE OF DELIBERATE INDIFFERENCE TO EITHER AVILA'S MEDICAL NEEDS OR HIS SAFETY.

The Court begins by noting that TDCJ is immune from suit under Section 1983. *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Moreover, as previously noted, Avila's transfer to the Pack Unit has mooted his claims for declaratory and injunctive relief. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). That means that Avila's only live federal claims are claims for compensatory and punitive damages against Dr. Hinkle. Avila appears to be asserting Eighth Amendment claims against Dr. Hinkle for both deliberate indifference to his medical needs and deliberate indifference to his safety. In his state-court petition, Avila stated that "[t]his situation is 'safty' [sic] and criminal malpractice from Dr. Hinkle who was a negligent [sic] on his professional practice" (Dkt. 1-2 at p. 5).

#### A.  Prisoners and safety—the legal standard

Under the Eighth Amendment, prisoners have a right to "humane conditions of confinement[,]" and prison officials are required to provide the prisoners with adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quotation marks omitted). Prison officials must take reasonable measures to

guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment mandates *reasonable* safety, not *absolute* safety; and prison officials are not liable when they make good-faith errors in assessing a potential danger. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Not every injury suffered by a prisoner translates into Constitutional liability for prison officials responsible for the inmate's safety. *Farmer*, 511 U.S. at 834. Rather, Avila must show that Dr. Hinkle was deliberately indifferent to his safety. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or mistaken in their judgment. *Id.*; *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999). Establishing deliberate indifference, in fact, requires more even than a showing of gross negligence. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (pointing out that gross negligence is "a heightened degree of negligence" while deliberate indifference is "a lesser form of intent") (quotation marks omitted). To establish deliberate indifference in a prison conditions case, a prisoner must show that the prison officials: (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) actually drew an inference that such potential for harm existed. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a

finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

In short, it would not be enough for Avila to establish that he was injured by the negligence, or even the gross negligence, of Dr. Hinkle. In order to establish an Eighth Amendment violation, Avila must show that Dr. Hinkle knowingly exposed him to and consciously disregarded a substantial risk of serious harm. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

### B. Prisoners and medical care—the legal standard

A prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle*, 429 U.S. at 104. The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of mankind." *Id.* at 104–06 (quotation marks omitted). The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). This is an "extremely high standard to meet"—*Domino*, 239 F.3d at 756—and, absent

exceptional circumstances, it is not met by an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment. *Id.*; *Gobert*, 463 F.3d at 346. Rather, the prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770 (quotation marks omitted).

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a Constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("[The] plaintiff stated that he had not received 'optimum' or 'best' medical treatment. Were this the legal standard, a trial of the issues might be required.").

### C. Avila's claims against Dr. Hinkle

Avila's medical records provide no evidence that Dr. Hinkle was deliberately indifferent to either Avila's safety or his medical needs; rather, the information in those records conclusively negates, if nothing else, the state-of-mind component of the deliberate indifference analysis. Dr. Hinkle evaluated Avila's left elbow four times and

found that his condition did not warrant a lower-bunk pass. Mindful of Avila's religious objections to oral medication, Dr. Hinkle treated Avila's complaints of pain with topical steroid cream and then a steroid injection. The injection, in particular, provided immediate relief. Dr. Hinkle also recommended that Avila perform daily range-of-motion exercises and physical therapy. When Avila experienced pain in his left hand after the steroid injection, Dr. Hinkle referred him to UTMB, where he was seen by specialists at two different departments. It is true that those specialists recommended that Avila be given a lower-bunk restriction, but Dr. Hinkle was not bound by their recommendation. And Dr. Hinkle's determination that a lower-bunk restriction for Avila was not medically indicated was clearly not beyond the pale: another doctor and a nurse separately concurred after evaluating Avila themselves. There is no evidence that Avila ever fell or otherwise sustained injury as a result of having to climb onto a top bunk, and if there was such an incident there is no evidence that Dr. Hinkle knew about it.

What Avila's Eighth Amendment claim ultimately boils down to is disagreement with Dr. Hinkle's conclusion that a lower-bunk restriction was not medically indicated. Mere disagreement with the denial of a lower-bunk restriction will not establish an Eighth Amendment claim against a medical provider. *See, e.g., Rose v. Livingston*, No. 9:12-CV-196, 2013 WL 866199, at *4–5 (E.D. Tex. Mar. 6, 2013); *Flowers v. Isbelle*, No. H-12-1165, 2012 WL 6099046, at *3 (S.D. Tex. Dec. 7, 2012). Avila's medical records show that Dr. Hinkle's conduct was neither repugnant to the conscience of mankind nor an unnecessary and wanton infliction of pain and that Dr. Hinkle did not disregard a known risk of serious harm to Avila. Dr. Hinkle simply exercised his

reasoned medical judgment and made the treatment recommendations he thought were appropriate, and his conduct is not actionable under the Eighth Amendment. *See Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012).

The Court concludes that Avila's federal claims must be dismissed. The Court declines to exercise supplemental jurisdiction over Avila's state-law claims. *See* 28 U.S.C. § 1367(c)(3).

### IV. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 14) is **GRANTED** as to Avila's federal claims. Avila's claims for compensatory and punitive damages against Dr. Hinkle are **DISMISSED WITH PREJUDICE**. Avila's claims for declaratory and injunctive relief against Dr. Hinkle are **DISMISSED WITHOUT PREJUDICE** as moot. Avila's claims against TDCJ are **DISMISSED WITH PREJUDICE** as barred by sovereign immunity.

2. Avila's claims under Texas state law are **REMANDED** to the 412th District Court of Brazoria County, Texas.

The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to mail a certified copy of this order to the District Clerk of Brazoria County, Texas and the Clerk of the 412th District Court of Brazoria County, Texas. The relevant Brazoria County cause number is 76949-I.

SIGNED at Galveston, Texas on September 29, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE